This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Trace-A-Matic Corporation ("Trace-A-Matic"), appeals from a judgment of the Summit County Court of Common Pleas that, based on the decision of a magistrate, entered judgment for appellee, HM Metal Processing Company ("H M"). We affirm.
The dispute in this case involves the processing of huge cylinder liners that are used in locomotive diesel engines manufactured by General Motors ("GM"), who is not a party to this case. The cylinder liners were cast by Motor Castings, a direct customer of GM who is also not a party to this case. For further processing of the cylinder liners, Motor Castings subcontracted with Trace-A-Matic who in turn subcontracted with HM for heat treating of the liners. Although GM accepted all of these cylinders, in separate shipments delivered over a period of months, it discovered much later that over 270 cylinder liners were defective.
This litigation arose after GM charged Motor Castings, who in turn charged Trace-A-Matic, $300,000 for damages allegedly caused by the defects in the cylinder liners. Trace-A-Matic apparently did not contest its liability to Motor Castings, but instead paid the money and refused to pay HM the money it was due. HM brought this action, alleging that it was due approximately $75,000 for the work it performed on the cylinder liners. Trace-A-Matic filed a counterclaim, alleging that HM was responsible for the $300,000 in damages that Trace-A-Matic had been charged by Motor Castings.
Following a hearing before a magistrate, the magistrate found that HM had caused the damage to over 270 cylinder liners, but that it was accountable in damages to Trace-A-Matic only for the first shipment of sixteen. The magistrate found that the first sixteen cylinder liners were accepted by GM, who had a duty to inspect for defects and, because GM continued to order more shipments of cylinders, it had no right to damages for any subsequent shipments. The court stressed that it did not understand why Trace-A-Matic had paid the $300,000 to Motor Castings because it did not have a legal duty to do so. Because Trace-A-Matic's maximum liability to Motor Castings was for the first sixteen cylinder liners, those were the only damages awarded to Trace-A-Matic to offset the $75,000 it owed HM. The magistrate found that Trace-A-Matic owed HM $57,720.
Although Trace-A-Matic filed objections to the magistrate's decision, the trial court overruled the objections, adopted the magistrate's decision, and entered judgment. Trace-A-Matic appeals and raises two assignments of error, which will be consolidated because Trace-A-Matic argued them jointly.
 ASSIGNMENT OF ERROR I "The Magistrate, whose findings of fact and conclusions of law were adopted by the trial court, erred in concluding that, although plaintiff HM Metal Processing Company (`HM') expressly warranted that all of the cylinder liners it delivered would conform to sample cylinder liners it had previously provided, defendant and counterclaimant Trace-A-Matic Corporation (`Trace-A-Matic') had a legal duty to discover any and all defects in the first 16 cylinder liners subsequently discovered by HM, and that by failing to discharge that supposed legal duty, Trace-A-Matic forfeited its right to recover damages from HM for breach of its express warranty on the next 261 cylinder liners, which were also defective."
 ASSIGNMENT OF ERROR II "The Magistrate erred in finding that a pre-production approval process protocol (`PPAP') promulgated by General Motors Corporation (`GM'), the ultimate customer for the cylinder liners, somehow became part of the contract between Trace-A-Matic and HM, and operated to excuse HM from breach of warranty liability for 261 of the total 277 defective cylinder liners that HM delivered to Trace-A-Matic."
Initially, we must note that Trace-A-Matic raises several arguments on appeal that it did not raise below. Civ.R. 53(E)(3)(b) provides that "[a] party shall not assign error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." Thus, we are precluded from reaching those portions of Trace-A-Matic's arguments that were not preserved through timely objections to the magistrate's decision.
The argument that Trace-A-Matic has preserved for review focuses exclusively on the terms of the contract between Trace-A-Matic and HM. Trace-A-Matic specifically focuses on whether it had a duty to inspect the cylinder liners after HM processed them and, if so, whether the duty of inspection abrogated HM's warranties on the products. Even if Trace-A-Matic could prevail on these arguments, it would not be able to demonstrate reversible error.
The trial court's decision to limit Trace-A-Matic's damages (and HM's liability) to the first sixteen cylinder liners was based primarily on Trace-A-Matic's contract with Motor Castings, not its contract with HM. Trace-A-Matic sought damages from HM because Motor Castings had charged it $300,000 in damages for the defective cylinder liners. The trial court concluded that Trace-A-Matic failed to prove its damages because it had no legal obligation to pay the $300,000.
The trial court found that GM had a duty to inspect the products and discover defects, and because it did not do so, its remedy was limited. Because "defects were present in the initial production run, and those defects not identified by the customer upon receipt, subsequent purchases of additional production run items could not permit a damage claim beyond those damages associated with the first order which contained problems of the same nature. * * * The question is why [GM] waited until September to complain, and why it allowed the incorporation of defective parts in products sold to customers? Inspection would have prevented this. * * *
"With approximately 16 items being involved in the first purchase order at a cost of $1,080.00, the maximum loss that [GM] could pass on down the chain of responsibility starting with Motor Castings would be 16 times $1,080, or $17,280. * * * [GM] would have no right to debit Motor Castings in the total amount as it did in this case[.] * * * Why Motor Castings accepted the full back charge debit of the much higher amount by [GM] is not known. * * * [U]nder the evidence provided, Motor Castings was not obligated, or under any legal duty to accept such back charges. Likewise, Trace A Matic was not obligated to accept Motor Castings' debit to it."
Because Trace-A-Matic does not challenge the trial court's finding on this issue, it cannot demonstrate reversible error. The assignments of error are overruled.
The assignments of error are overruled and the judgment of the trial court is affirmed.
WHITMORE, J., BATCHELDER, J. CONCUR.